C. Ryan Christensen (Bar No. 9546)
SIEGFRIED & JENSEN
5664 S. Green Street
Murray, UT 84123
Main Office:  801-266-0999
Direct:  801-743-1569
Facsimile:  877-218-9068
E-Mail: ryanc@sjatty.com

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANGELA K. NIELSON, individually and on behalf of THE ESTATE OF BRETT W. NIELSON; RYLEE NIELSON; ERIC NIELSON; and LINDA NIELSON; <br><br>     Plaintiffs, <br><br> v. <br><br> HARLEY DAVIDSON MOTOR COMPANY GROUP, LLC, GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., THE GOODYEAR TIRE & RUBBER CO.; SUMITOMO RUBBER USA, LLC.; and BELLINGHAM HARLEY DAVIDSON, INC; <br><br>     Defendants. | **COMPLAINT** <br><br><br><br><br><br><br><br><br><br> **Civil Action No. 4:18-cv-00013-DN** <br> **Judge David Nuffer** |

    Plaintiffs, by and through their attorneys, complain of the Defendants and allege as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff, Angela K. Nielson is resident of Millard County, State of Utah.

2.      Plaintiff, Brett W. Nielson who was killed in the subject incident, was lawfully married to Angela K. Nielson and resided with her in Millard County, State of Utah.

3.      Plaintiff RyLee Nielson is the natural daughter of Brett and Angela Nielson, and is a resident of Salt Lake County, Utah.

4.      Plaintiff Eric Nielson is the father of Brett Nielson, and is a resident of Millard County, Utah.

5.      Plaintiff Linda Nielson is the mother of Brett Nielson, and is a resident of Millard County, Utah.

6.      Defendant Goodyear Dunlop Tires North America, Ltd. is an Ohio corporation doing business in the State of Wisconsin with its principal place of business located at 1144 East Market Street, Akron, Ohio, with a Wisconsin Registered Agent, Corporation Service Company, located at 8040 Excelsior Drive, Suite 400, Madison, Wisconsin.

7.      Defendant The Goodyear Tire and Rubber Co. is an Ohio corporation doing business in the State of Wisconsin with its principal place of business located at 200 Innovation Way, Dept. 616, Akron, Ohio, with a Wisconsin Registered Agent, Corporation Service Company, located at 8040 Excelsior Drive, Suite 400, Madison, Wisconsin.

8.      Sumitomo Rubber USA, LLC is an Ohio corporation doing business in the State of Wisconsin with its principal place of business located at 10 Sheridan Drive, Tonawanda, NY 14150.

9.    Defendants Goodyear Dunlop Tires North America, Ltd., The Goodyear Tire and Rubber Co., and Sumitomo Rubber USA, LLC will hereinafter collectively be referred to as "Goodyear-Dunlop."

10.    Harley Davidson Motor Company Group, LLC is a Wisconsin corporation doing business in the State of Wisconsin with its principal place of business located at 3700 West Juneau, Milwaukee, Wisconsin, 53208.

11.    Bellingham Harley Davidson, Inc. is a Washington corporation, with its principal place of business in Washington.75,000 Harley Davidson Motor Company Group, LLC was the manufacturer of the subject motorcycle and Bellingham Harley Davidson, Inc. was the supplier. They are collectively referred to herein as "Harley Davidson".

12.    This case involves an amount in controversy in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs and interest.

13.    This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. §1332(a)(1).

14.    Venue within the District of Utah is appropriate pursuant to 28 U.S.C. § 1391(b)(c) and (d).

**FACTUAL ALLEGATIONS**

15.    The Goodyear-Dunlop Defendants designed, manufactured, sold, and supplied the Dunlop D402 Harley Davidson tires for the 1995 Harley Davidson Ultra Classic Electra Glide motorcycle, VIN 1HD1DPL14SY610086, (referred to as "the motorcycle" or "the Harley Davidson") involved in this case.

16.     The failed tire at issue is a MT90B16 Dunlop D402 Harley Davidson motorcycle tire (DOT DATRM17M0808) mounted on the rear position of the Harley Davidson at the time of the crash.

17.     On April 22, 2016, at approximately 4:08 p.m., Plaintiffs, Brett W. Nielson and his passenger Angela K. Nielson were driving the Harley Davidson equipped with Dunlop D402 Harley Davidson tires in a northbound direction on Interstate 15 in Iron County, State of Utah when the rear tire experienced a sudden and catastrophic failure resulting in loss of control of the motorcycle at highway speeds.

18.     On the above date and time, Brett W. Nielson was exercising care in riding his motorcycle and wearing a proper helmet and using available safety equipment.

19.     On the above date and time, Brett W. Nielson was operating the Harley Davidson equipped with Goodyear-Dunlop tires in a manner that was foreseeable and expected by the Defendants when the rear tire experienced a sudden and catastrophic failure.

20.     As a result of the aforementioned tire failure, the Harley Davidson tipped over, rolled, and threw the Plaintiffs from the vehicle.

21.     Plaintiff Brett W. Nielson died as a result of his injuries at the scene.

22.     Plaintiff Angela K. Nielson sustained serious, permanent, and life-altering injuries as a result of her ejection.

23.     Plaintiff Angela K. Nielson lost the care, comfort, and support of her husband, Brett W. Nielson, as a result of the failed tire.

### FIRST CLAIM – NEGLIGENCE AND GROSS NEGLIGENCE

24.     Plaintiffs re-allege and reincorporate all preceding paragraphs herein.

25.     Goodyear-Dunlop researched, developed, designed, manufactured, marketed, assembled, inspected or failed to inspect, tested or failed to test, warranted, performed in-field monitoring, sold, and supplied the failed Dunlop D402 Harley Davidson tire for the Harley Davidson motorcycle in the ordinary course of its business.

26.     At the time Goodyear-Dunlop researched, developed, designed, manufactured, marketed, assembled, inspected or failed to inspect, tested or failed to test, warranted, performed in-field monitoring of the failed tire line, it had a duty to exercise reasonable care in order to provide a safe product (that can be safely used and maintained in a manner and for the purpose for which it was made) and to research, develop, design, manufacture, market, assemble, inspect, sell, distribute, test, warrant, and monitor the product so as not to subject users of the Dunlop D402 Harley Davidson tires, including Plaintiffs, to an unreasonable risk of injury or harm resulting from tire failure.  Goodyear-Dunlop breached these duties.

27.     Goodyear-Dunlop was negligent in the design, testing, manufacture, warnings, and sale of the failed tire which failed to adequately and properly protect Plaintiffs.

28.     Goodyear-Dunlop's negligence was a substantial factor in causing Plaintiff Brett Nielson's death and Angela Nielson's serious, permanent, and disabling injuries.

29.     At the time of the accident described herein, the failed tire was being used on the Harley Davidson in a manner reasonably anticipated by the Defendants.

30.     The failed tire was negligently manufactured at Goodyear-Dunlop's Tonawanda, New York tire plant, was negligently designed, was negligently inspected, and was deceptively and unconscionably sold by Goodyear-Dunlop in breach of quality assurances.

31.     Goodyear-Dunlop failed to use ordinary and reasonable care in manufacturing the subject tire in that the tire was manufactured with excessive flash on the bead, untrimmed and, therefore, outside of any reasonable specification or tolerance. These conditions rendered the tire unreasonably dangerous. These conditions indicate that the failed tire did not meet Goodyear-Dunlop internal specifications. Goodyear-Dunlop had a duty to discover and remedy these conditions during the post-cure inspection process and Goodyear-Dunlop breached these duties by failing to follow its own internal standards and by selling a tire that fell below its own quality control standards.

32.     Goodyear-Dunlop had a duty to prevent inadequate bonding in the mold of the failed tire that would create flash on the tire's bead. Goodyear-Dunlop breached this duty.

33.     Goodyear-Dunlop had a duty to use ordinary and reasonable care in inspecting the failed tire. Goodyear-Dunlop breached this duty.

34.     If the failed tire had been properly inspected at Goodyear-Dunlop's Tonawanda plant, it would never have left the plant for sale to the public with the observable excess flashing present at the bead of the tire.

35.     Considering the number of tires Goodyear-Dunlop was producing in 2008 at Goodyear-Dunlop's Tonawanda plant, and considering the number of tire inspectors and classifiers assigned with the task of inspecting those tires, Goodyear-Dunlop negligently understaffed its quality control and tire inspecting personnel.

36.     Goodyear-Dunlop's current and former employees working in the tire building and tire inspection rooms at Goodyear-Dunlop's Tonawanda plant have knowledge of relevant facts in so far as they witnessed negligent manufacturing practices inside the plant.

37.    The failed tire reflects Goodyear-Dunlop's gross neglect of its quality assurance policy at the Tonawanda plant, and this gross neglect is part of a pattern of unconscionable and dangerous conduct at the Tonawanda plant.

38.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire inspection rooms at Goodyear-Dunlop's Tonawanda plant witnessed toe-ring flash and excessive flash at the bead, beyond the acceptable standards, which corroborates the neglectful operation of the Tonawanda plant.

39.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire inspection rooms at Goodyear-Dunlop's Tonawanda plant witnessed roof leaks onto tire building machinery and tire component parts, which corroborates the neglectful operation of the Tonawanda plant.

40.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire inspection rooms at Goodyear-Dunlop's Tonawanda plant witnessed the use of plastic to divert water dripping from roof leaks, rather than the prompt repair of these roof leaks, which corroborates the neglectful operation of the Tonawanda plant.

41.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire inspection rooms at Goodyear-Dunlop's Tonawanda plant have relevant knowledge in so far as they have witnessed the stacking of rubber components on the unclean floor of the Tonawanda plant where those components were subject to contamination, which corroborates the neglectful operation of the Tonawanda plant.

42.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire inspection rooms at Goodyear-Dunlop's Tonawanda plant have relevant knowledge in so far as they have witnessed that Goodyear-Dunlop's quality inspection process has failed to prevent contaminants from being cured into tires at the Tonawanda plant, which corroborates the neglectful operation of the Tonawanda plant.

43.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire component preparation rooms at Goodyear-Dunlop's Tonawanda plant have knowledge of relevant facts in so far as they witnessed the use of rubber and rubber-coated components that lost some of their tack and the use of solvents in an attempt to restore that tack, which corroborates the neglectful operation of the Tonawanda plant.

44.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire component preparation rooms at Goodyear-Dunlop's Tonawanda plant have knowledge of relevant facts in so far as they witnessed the use of out-of-specification tire components when building tires at the Tonawanda plant, which corroborates the neglectful operation of the Tonawanda plant.

45.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire component preparation rooms at Goodyear-Dunlop's Tonawanda plant have knowledge of relevant facts in so far as they witnessed the lax enforcement of standards to avoid misplacement and improper splicing of the steel belts and the rubber and rubber-coated components surrounding the steel belts, which corroborates the neglectful operation of the Tonawanda plant.

8

46.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire component preparation rooms at Goodyear-Dunlop's Tonawanda plant have knowledge of relevant facts in so far as they witnessed tires built on Tonawanda tire building machines which had been altered to increase the speed at which tires were being built to accommodate the demand for inflated production numbers imposed on plant workers, which corroborates the neglectful operation of the Tonawanda plant.

47.    As part of this pattern of gross neglect, Goodyear-Dunlop has possession of documents, testimony, and information which confirm that its practices have included paying Tonawanda plant tire building employees on a bonus incentive system based on quantity in production, and this system undermined the production of safe tires, which corroborates the neglectful operation of the Tonawanda plant.

48.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the tire building and tire inspection rooms at Goodyear-Dunlop's Tonawanda plant have relevant knowledge in so far as they have witnessed the use of awls in the tire building process at the Tonawanda plant, which corroborates the neglectful operation of the Tonawanda plant.

49.    As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working in the final finish room at Goodyear-Dunlop's Tonawanda plant have knowledge of relevant facts in so far as they witnessed the lax enforcement of standards affecting the final finish inspection process, which corroborates the neglectful operation of the Tonawanda plant.

50.     As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working at the Tonawanda plant have relevant knowledge in so far as they routinely witnessed a backlog of tires requiring repair occupying the storage room in the plant due to the plant's understaffed repair personnel, which corroborates the neglectful operation of the Tonawanda plant.

51.     As part of this pattern of gross neglect, Goodyear-Dunlop's current and former employees working at the Tonawanda plant have relevant knowledge in so far as they witnessed the use of defective or over-utilized and worn-out molds which resulted in excess flashing along the tire's bead, which corroborates the neglectful operation of the Tonawanda plant.

52.     At the time it designed and manufactured the failed tire and its components, Goodyear-Dunlop had a duty to carefully staff the tire design, manufacturing, and quality control positions and had a duty to carefully train its employees involved in the tire design and manufacturing processes, including the quality control processes at the Tonawanda plant where the tire was manufactured.  Goodyear-Dunlop breached these duties.

53.     The quality control inspection process in the final finish department is the tire company's principle opportunity to identify defects in cured tires and to scrap or repair those defective tires before they reach the consumer in a defective condition.

54.     A prudent tire company must vigilantly enforce internal standards within its final finish room to ensure that all defects are identified so that defective tires do not reach the public, yet Goodyear-Dunlop is aware of practices applicable at its Tonawanda tire plant which have resulted in the lax enforcement of standards at the workplace affecting the final finish inspection process.

55.     Each of the above-listed inappropriate manufacturing and quality control practices evidence Goodyear-Dunlop's persistent, plant-wide negligence in regards to quality assurance at the Tonawanda plant.

56.     Goodyear-Dunlop has standards by which a tire returned under warranty can be assessed to determine whether the tire falls outside Goodyear-Dunlop's defect standards for workmanship and materials.

57.     The failed tire falls outside Goodyear-Dunlop's standards by which a tire returned under warranty can be assessed to determine whether the tire falls outside the defect standards for workmanship and materials.

58.     By this defective design and manufacture, deceptive and unconscionable sale, negligent inspection, and negligent installation of the tire, Goodyear-Dunlop was further guilty of acts of omission and commission, which, collectively and separately, constituted deceptive and negligent and unconscionable breaches of quality assurances, and such conduct was a cause of damages to Plaintiffs.

59.     Despite Harley Davidson's knowledge that its original equipment tire supplier was producing numerous tires (such as the failed tire) which fell outside the supplier's quality standards and specifications and that this failure to meet the quality standards has been the subject of numerous claims, including property damage claims and claims involving death or injury across the nation, Harley Davidson nevertheless continued to sell such tires with a known and visible defect, notwithstanding that this defect has been found to lead to tire failure.

60.     In addition to Harley Davidson's knowledge regarding the defects and substandard quality of the tires produced by its supplier, Harley Davidson also failed to

adequately warn the Plaintiffs regarding its own motorcycle's Gross Vehicle Weight Rating ("GVWR").

61.    Harley Davidson may allege that Plaintiffs overloaded the motorcycle by their own weight and the weight of their gear. If the weight of the Plaintiffs and their gear was a cause of the tire failure and/or their injuries, then the motorcycle sold to them was unreasonably dangerous for its intended use.  The motorcycle would also be unreasonably dangerous and defective, especially in the absence of tire pressure and temperature monitoring equipment.

62.    Harley Davidson's failure to adequately warn the Plaintiffs about the motorcycle's GVWR may also have contributed to the cause of the subject incident.

63.    As a result of the negligence of the Goodyear-Dunlop and Harley Davidson Defendants, Plaintiff Brett Nielson was killed and Angela K. Nielson sustained injuries and was caused to suffer damage and will continue to suffer special and general damages for an indefinite period of time in the future, for which damages are claimed in an unspecified amount.

64.    As a result of the negligence of the Goodyear-Dunlop and Harley Davidson Defendants, Plaintiff Angela Nielson was compelled to and did employ the services of hospitals, physicians, nurses and the like, to care for and treat her injuries, and did incur hospital, medical, professional, and incidental expenses, and by reason of her injuries, will necessarily incur additional like expenses for an indefinite period of time in the future, the exact amount of which expenses will be stated according to proof at the time of trial, for which she claims damages in an unspecified amount.

65.    As a result of the negligence the Goodyear-Dunlop and Harley Davidson Defendants, Plaintiff Angela K. Nielson's ability and capacity for work and labor, and for

12

enjoyment of life, has been permanently damaged, diminished, and impaired.  Plaintiff Angela Nielson also lost certain time and monies from her employment, for which she claims damages in an unspecified amount.

66.     As a result of the negligence of the Goodyear-Dunlop and Harley Davidson Defendants, Plaintiff Angela Nielson has suffered and, in the future will endure permanent pain, suffering, and disability, for which she claims general damages in an unspecified amount.

67.     As a result of the negligence of the Goodyear-Dunlop and Harley Davidson Defendants, Plaintiffs claim damages against the Goodyear-Dunlop and Harley Davidson Defendants for the wrongful death of Brett Nielson, including but not limited to, special damages, general damages, and the loss of services, society, and companionship, in an unspecified amount.

## SECOND CLAIM – STRICT LIABILITY

68.     Plaintiffs re-allege and reincorporate all preceding paragraphs.

69.     The Dunlop D402 Harley Davidson tire on the Harley Davidson which caused death and injury to Plaintiffs was researched, developed, designed, manufactured, marketed, assembled, inspected or failed to be inspected, tested or failed to be tested, assembled, warranted, in-field monitored, sold, and supplied by Goodyear-Dunlop.

70.     The Dunlop D402 Harley Davidson tire on the Harley Davidson was defective and unreasonably dangerous in design and manufacture when it left the possession and control of the Defendants.

71.     At the time the Dunlop D402 Harley Davidson tire on the Harley Davidson which caused death and injury to Plaintiffs was sold and placed on the market, it was in a defective and unreasonably dangerous condition to users and consumers.

72.     At the time the failed tire was manufactured and placed into the stream of commerce by Goodyear-Dunlop, it contained manufacturing defects which were unreasonably dangerous to Plaintiffs, who were intended and reasonably foreseeable users.

73.     At the time the failed tire was manufactured and placed into the stream of commerce by Goodyear-Dunlop, it contained design defects which were unreasonably dangerous to persons including the Plaintiffs, who were intended and reasonably foreseeable users.

74.     Because of its defective nature, the failed tire was unfit and unreasonably dangerous as used in a foreseeable manner, and Goodyear-Dunlop knew, or in the exercise of reasonable care should have known, that the failed tire was unreasonably dangerous in this manner and unfit for its warranted purposes.

75.     The failed tire was defective and unreasonably dangerous to ultimate users, operators, or consumers when sold and distributed by Goodyear-Dunlop because of design, manufacturing, and inspection defects that caused the tire to fail, including but not limited to the following:

   a) The failed tire was sold in violation of Goodyear-Dunlop's specifications for the maximum amount of rubber flashing observable at the bead of the tire which sets a minimally acceptable standard in order for the tire to pass inspection to qualify the tire as suitable to be sold to the general public.
   b) The defects in the bead of the tire include excessive flash on the bead, untrimmed and, therefore, outside of any reasonable specification or tolerance.
   c) The use of defective or over-utilized and worn-out molds which resulted in excess flashing along the tire's bead.

14

d) The failed tire was not adequately designed to prevent failure despite the fact that much safer designs were technologically feasible at the time the failed tire was made, in use within the industry, and employed by other tire manufacturers, as well as Goodyear-Dunlop.

e) As designed and manufactured, the failed tire was not reasonably durable for its intended and foreseen uses.

f) The failed tire's components were defectively and inadequately researched, developed, designed, manufactured, and selected without regard to providing adequate strength to prevent failure in foreseeable conditions.

g) The failed tire and its component parts were defective due to Goodyear-Dunlop's failure to test or adequately test the tire and its parts to ensure they were reasonably safe and suitable for their intended purpose and use.

h) The failed tire and its components were defective due to Goodyear-Dunlop's failure to design the tire and components to ensure that the tire and components wear out before experiencing a structural failure.

i) The failed tire was manufactured by Goodyear-Dunlop without adequate quality control measures.

j) The specifications for the failed tire and its curing processes as designed and as implemented at the Tonawanda plant were improper and the tire was not manufactured in accordance with the specifications designated for the failed tire.

76. The failed tire was defective in its manufacture, it varied from its design and planned output, it fell short of quality assurances, and it was unfit for the ordinary purposes for which such tires are used.

77. Goodyear-Dunlop has specifications for the maximum amount of rubber flashing observable at the bead of the tire which sets a minimally acceptable standard in order for the tire to pass inspection to qualify the tire as suitable to be sold to the general public. The failed tire did not meet these specifications.

78. There was a visible defect in the tire when it was defectively designed and manufactured, deceptively and unconscionably sold, and negligently inspected by Goodyear-

Dunlop, and this sale and inspection of the visibly defective tire was a cause of Plaintiff Brett Nielson's death and Angela K. Nielson's serious, permanent, and disabling injuries.

79.     Moreover, because the defects include a visible defect of grossly excessive rubber flashing at the bead of the tire which would necessarily be observed in the inspection and tire mounting process, Goodyear-Dunlop intentionally, recklessly, and wantonly sold this tire with knowledge of the excess rubber defect which the Plaintiffs assert as the cause of their harms.

80.     The failed tire on the Harley Davidson, which killed Plaintiff Brett Nielson and caused severe bodily injury to Angela Nielson, was expected to and did reach Plaintiffs without substantial change in the condition in which it was sold by Goodyear-Dunlop.

81.     The failed tire on the Harley Davidson, which caused the aforementioned death and injuries, was defective in design because foreseeable risks of harm could have been reduced or avoided by the adoption of reasonable alternative designs by Goodyear-Dunlop and the omission of the alternative designs rendered the tire unreasonably unsafe.

82.     The failed tire on the Harley Davidson, which caused the aforementioned death and injuries, was defective because the tire departed from the intended design.

83.     The failed tire, which caused the aforementioned death and injuries, was defective because foreseeable risks for harm could have been reduced or avoided by the provision of reasonable instructions or warnings by Goodyear-Dunlop and the omission of the instructions or warnings renders the failed tire on the Harley Davidson unreasonably unsafe.

84.     The unreasonably dangerous and defective condition of the Dunlop D402 Harley Davidson tire on the Harley Davidson was a substantial factor in causing the death of Brett Nielson and the significant injuries to Angela Nielson.

16

85.     At the time of the crash described herein, the failed tire on the Harley Davidson was being used in a manner reasonably anticipated by Goodyear-Dunlop.

86.     As a result of the manufacturing defects listed above, the tire failed to perform as safely as an ordinary consumer or passenger would expect when utilizing that tire in an intended and reasonably foreseeable manner.

87.     As a result of the design defects listed above, the tire failed to perform as safely as an ordinary consumer or passenger would expect when utilizing the failed tire in an intended and reasonably foreseeable manner.

88.     As a result of the defects listed above, which were not identified at Goodyear-Dunlop's Tonawanda plant due to careless quality control inspections, the failed tire failed to perform as safely as an ordinary consumer or passenger would expect when utilizing the failed tire in an intended and reasonably foreseeable manner.

89.     Harley Davidson sold the defective tire that was mounted on the rear position of the Harley Davidson Plaintiff Brett Nielson was driving at the time of the crash.

90.     Despite Harley Davidson's knowledge that its original equipment tire supplier was producing numerous tires (such as the failed tire) which fell outside the supplier's quality standards and specifications and that this failure to meet the quality standards has been the subject of numerous claims, including property damage claims and claims involving death or injury across the nation, Harley Davidson nevertheless continued to sell such tires with a known and visible defect, notwithstanding that this defect has been found to lead to tire failure.

91.     The failed tire on the Harley Davidson, which caused the aforementioned death and injuries, was expected to and did reach Plaintiffs without substantial change in the condition in which it was sold by Harley Davidson.

92.     As a result of the defective and unreasonably dangerous condition of the tire on the Harley Davidson, Plaintiff Angela K. Nielson sustained injuries and was caused to suffer damages and will continue to suffer general and special damages for an indefinite period of time in the future, for which she claims damages in an unspecified amount.

93.     As a result of the defective and unreasonably dangerous condition of the tire on the Harley Davidson, Plaintiff Angela K. Nielson was compelled to and did employ the services of hospitals, physicians, nurses and the like, to care for and treat her injuries, and did incur hospital, medical, professional, and incidental expenses, and by reason of her injuries will necessarily incur additional like expenses for an indefinite period of time in the future, the exact amount of which expenses will be stated according to proof at the time of trial, for which she claims damages in an unspecified amount.

94.     As a result of the defective and unreasonably dangerous condition of the tire on the Harley Davidson, Plaintiff Angela Nielson's ability and capacity for work and labor, and for enjoyment of life, has been permanently damaged, diminished, and impaired.  Plaintiff Angela Nielson also lost certain time and monies from her employment, for which she claims damages in an unspecified amount.

95.     As a result of the defective and unreasonably dangerous condition of the tire on the Harley Davidson, Plaintiff Angela Nielson has suffered and, in the future, will endure pain, suffering, and disability for which she claims damages in an unspecified amount.

96.     As a result of the defective and unreasonably dangerous condition of the tire on the Harley Davidson, Plaintiffs claim general and special damages against the Goodyear-Dunlop and Harley Davidson Defendants for the death of Brett Nielson, including but not limited to, the loss of services, society, and companionship in an unspecified amount.

## THIRD CLAIM – BREACH OF WARRANTY

97.     Plaintiffs re-allege and reincorporate all preceding paragraphs.

98.     Defendants impliedly and/or expressly warranted that the tire, and each and every component part thereof, was fit for the purpose for which it was to be used, was merchantable, and was free from design and manufacturing defects to consumers and users thereof.

99.     The tire, and each and every component part thereof, was not merchantable, free from such defects nor fit for the purpose for which it was to be used, because it was defective.

100.     On or about April 22, 2016, as a direct and proximate result of each breach of warranty by the Defendants, Plaintiffs suffered severe personal injuries and the loss of Brett Nielson, as a result of the failure of the tire.

101.     As a direct and proximate result of the conduct of the Defendants and the defective condition of the tire, which resulted in injury and death, Plaintiffs incurred the damages alleged below.

## DAMAGES

102.     All preceding paragraphs are hereby incorporated by reference and alleged herein as if set forth in full.

103.     As a direct and proximate result of the negligent, knowing, reckless, and careless acts of Defendants, Plaintiff Angela Nielson has, among other things, suffered past and future damages including pain and suffering, lost wages and economic support, funeral costs, wrongful

death and survivorship damages for the loss of her husband, and other damages that may be brought to light through the discovery process.

104.    As another direct and proximate result of Defendants' wrongful conduct, all of the named Plaintiffs, as heirs, have suffered pain and anguish of body and mind, inconvenience, wrongful death damages, and the loss of companionship and enjoyment of life arising from the death of Brett Nielson.

105.    As set forth above, the Defendants, and each of them, acted with a  knowing and reckless disregard for the rights and safety of the Plaintiffs, and as such, Plaintiffs are entitled to punitive damages pursuant to Utah Code Ann. §78-18-1.

## PRAYER FOR RELIEF

106.    WHEREFORE, Plaintiffs, Angela K. Nielson, individually and on behalf of The Estate of Brett W. Nielson, and all the other named Plaintiffs, as heirs, demand judgment in their favor for damages against the Defendants, as follows:

      a.   For special and general damages which Angela Nielson has personally suffered;

      b.   For wrongful death damages, including special and general damages, and loss of consortium for Angela Nielson, as the spouse of Brett Nielson;

      c.   For wrongful death damages, including special and general damages, and loss of consortium for all of the other named Plaintiffs as heirs to Brett Nielson;

      d.   For wrongful death damages, including special and general damages, for the Estate of Brett Nielson;

      e.   For punitive damages; and

      f.   For attorneys' fees, costs, disbursements, and such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, by and through counsel, hereby demand trial by jury on all matters alleged herein.

DATED this 11th day of April, 2018.

SIEGFRIED & JENSEN

/s/ C. Ryan Christensen
C. Ryan Christensen
*Attorneys for Plaintiff*

Plaintiff's address:
c/o Siegfried & Jensen
5664 South Green Street
Salt Lake City, UT 84123