IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANGELA K. NIELSON, individually and on behalf of THE ESTATE OF BRETT W. NIELSON; RYLEE NIELSON; ERIC NIELSON; and LINDA NIELSON,<br><br>Plaintiffs,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC; GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.; THE GOODYEAR TIRE & RUBBER CO.; SUMITOMO RUBBER USA, LLC.; and BELLINGHAM HARLEY-DAVIDSON, INC.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND INVITATION FOR BRIEFING RE: CERTIFICATION OF QUESTION TO UTAH SUPREME COURT**<br><br>Case No. 4:18-cv-00013-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

This action arises from a motorcycle accident allegedly caused by a sudden and catastrophic failure of the motorcycle's rear tire (the "Deflated Tire").[1] Plaintiffs assert three causes of action against Defendant Harley-Davidson Motor Company Group, LLC ("Harley-Davidson") regarding the Deflated Tire: (1) negligence and gross negligence;[2] (2) strict liability;[3] and (3) breach of warranty.[4]

---

[1] Second Amended Complaint ¶ 19, docket no. 57, filed May 2, 2019.

[2] *Id.* at ¶ 29 at 6, ¶¶ 59-60 at 11-12.

[3] *Id.* at ¶ 68 at 13, ¶¶ 87, 90-91 at 17.

[4] *Id.* ¶ 98 at 19.

Harley-Davidson's Motion for Summary Judgment[5] argues that Plaintiffs' claims fail because Plaintiffs cannot present evidence that Harley-Davidson designed, manufactured, distributed, or sold the Deflated Tire. Because genuine issues of material fact exist regarding Harley-Davidson's role as a designer, manufacturer, and distributor, Harley-Davidson's Motion for Summary Judgment[6] is DENIED.

Additionally, because it appears the portion of Plaintiffs' strict liability claim alleging Harley-Davidson's liability as a distributor may turn on an unanswered question of Utah state law, the parties are invited to address possible certification of the question of Utah law's application of the apparent-manufacturer doctrine to the Utah Supreme Court pursuant to Rule 41(a) of the Utah Rules of Appellate Procedure.

**Table of Contents**
BACKGROUND ................................................................................................................ 3
DISCUSSION .................................................................................................................... 4
    Plaintiffs' Second Amended Complaint mooted Harley-Davidson's summary judgment arguments relating to the Motorcycle ................................................................... 4
    Harley-Davidson's remaining arguments regarding the Deflated Tire must be analyzed in the context of the allegations in Plaintiffs' Second Amended Complaint .............. 5
    Genuine issues of material fact exist regarding Harley-Davidson's role as a designer and manufacturer of the Deflated Tire ........................................................................... 8
    Genuine issues of material fact exist regarding whether Harley-Davidson is in the Deflated Tire's chain of distribution .................................................................... 10
    The parties are invited to brief possible certification to the Utah Supreme Court of the application of the apparent-manufacturer doctrine in Utah ................................ 12
ORDER ............................................................................................................................ 16

---

[5] Motion for Final Summary Judgment and Supporting Memorandum of Law ("Motion for Summary Judgment") at 2; ¶ 8 at 4, docket no. 47, filed Mar. 29, 2019.

[6] *Id*.

## BACKGROUND

On April 22, 2016, Brett W. Nielson and his wife, Angela K. Nielson, were riding their 1995 Harley-Davidson Ultra Classic Electra Glide motorcycle (the "Motorcycle") when its rear tire deflated (the "Deflated Tire"), throwing the Nielsons from the Motorcycle.[7] Brett W. Nielson died at the scene of the accident and Angela K. Nielson suffered serious injuries.[8]

The Deflated Tire was not the original tire sold with the Motorcycle.[9] The Deflated Tire is a MT90B16 Dunlop D402 tire model (the "Dunlop Tire Model").[10] The Department of Transportation number of the Deflated Tire is DATRM17M0308 indicating that the Deflated Tire was manufactured in the third week of 2008 (January 14-18, 2008)[11] at Goodyear-Dunlop's tire plant located in Tonawanda, New York.[12]

The Dunlop Tire Model and Deflated Tire are co-branded with the Harley-Davidson name and trademarks.[13] Harley-Davidson distributes but is not the exclusive distributor of the Dunlop Tire Model.[14] There is no evidence identifying the seller of the Deflated Tire, or that Harley-Davidson sold the Deflated Tire.[15]

---

[7] Second Amended Complaint, *supra* note 1, ¶¶ 19-20 at 4.

[8] *Id.* ¶¶ 20-21 at 4.

[9] Motion for Summary Judgment, *supra* note 5, ¶ 9 at 4.

[10] Second Amended Complaint, *supra* note 1, ¶ 16 at 4.

[11] Motion for Summary Judgment, *supra* note 5, at 4 (citing Affidavit of Bryan Fulmer, ¶ 14 at 4, Appendix 3, docket no. 47-1, filed Mar. 29, 2019).

[12] Affidavit of William Woehrle, Exhibit 1, at 2, docket no. 58-1, filed May 3, 2019. Goodyear-Dunlop collectively refers to Defendants Goodyear Dunlop Tires North America, Ltd., The Goodyear Tire and Rubber Co. and Sumitomo Rubber USA, LLC.

[13] Motion for Summary Judgment, *supra* note 5, ¶ 9 at 4.

[14] *Id*.

[15] *Id.* at 2.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[17]

A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[18] In determining whether there is a genuine dispute as to material fact, the factual record is viewed and all reasonable inferences therefrom are drawn most favorably to the nonmovant.[19]

### Plaintiffs' Second Amended Complaint mooted Harley-Davidson's summary judgment arguments relating to the Motorcycle

Plaintiffs' First Amended Complaint alleged three causes of action: (1) negligence and gross negligence; (2) strict liability; and (3) breach of warranty.[20] Specific to Harley-Davidson, Plaintiffs alleged liability based on the Motorcycle that Brett Nielson was driving at the time of the accident and the Deflated Tire.[21]

Harley-Davidson's Motion for Summary Judgment raised four arguments for the dismissal of Plaintiffs' claims.[22] Three arguments related to the Motorcycle.[23] The fourth

---

[16] Fed. R. Civ. P. 56(a).

[17] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

[18] *Id*. at 670.

[19] *Id.*

[20] First Amended Complaint, docket no. 7, filed Apr. 20, 2018.

[21] *Id*. ¶¶ 59-62 at 12, ¶ 70 at 14, ¶¶ 89-91 at 18, ¶ 98 at 19.

[22] Motion for Summary Judgment, *supra* note 5, at 1.

[23] *Id.* at 1, 8-13.

4

argument related to the Deflated Tire, *i.e.*, that there is no evidence Harley-Davidson sold or distributed the Deflated Tire.[24]

However, subsequent to Harley-Davidson's Motion for Summary Judgment, Plaintiffs filed a Second Amended Complaint,[25] which removed Plaintiffs' allegations regarding the Motorcycle and amended the allegations relating to the Deflated Tire. The parties agree that the Second Amended Complaint's elimination of claims regarding the Motorcycle mooted Harley-Davidson's summary judgment arguments relating to the Motorcycle.[26]

## Harley-Davidson's remaining arguments regarding the Deflated Tire must be analyzed in the context of the allegations in Plaintiffs' Second Amended Complaint

Because Plaintiffs' Second Amended Complaint amended the allegations regarding Harley-Davidson's liability for the Deflated Tire, it is necessary to apply Harley-Davidson's remaining arguments on summary judgment to the amended pleading. Plaintiffs causes of actions based on the Deflated Tire are: (1) negligence and gross negligence; (2) strict liability; and (3) breach of warranty.[27]

In their negligence and gross negligence claim, Plaintiffs allege that Harley-Davidson (a) knew that the Dunlop Tire Model (including the Deflated Tire) had manufacturing defects and (b) continued to sell the Dunlop Tire Model "with a known and visible defect[.]"[28] Plaintiffs also allege that Harley-Davidson "failed [to] inspect" the Deflated Tire or "adequately warn the

---

[24] *Id.* at 7-8.

[25] Second Amended Complaint, *supra* note 1.

[26] Response to Motion for Final Summary Judgment and Supporting Memorandum of Law ("Response"), at 1, docket no. 58, filed May 3, 2019; Reply in Support of Motion for Final Summary Judgment and Supporting Memorandum of Law ("Reply"), at 1, docket no. 77, filed May 17, 2019.

[27] Second Amended Complaint, *supra* note 1, at 5-19.

[28] *Id.* ¶ 59 at 11-12.

Plaintiffs regarding recurring tire defects on tires branded by Harley-Davidson such as the [Deflated T]ire at issue."[29]

In their strict liability claim, Plaintiffs allege that the Deflated Tire was defective and dangerously designed and manufactured "when it left the possession and control of [Harley-Davidson]."[30] Plaintiffs also allege that Harley-Davison "was involved in the chain of distribution for the [Deflated T]ire" because it co-branded the Dunlop Tire Model.[31] Additionally, Plaintiffs allege that Harley-Davidson continued to sell the Dunlop Tire Model after becoming aware that "its original equipment tire supplier was producing numerous tires (such as the [Deflated Tire]) which fell outside the supplier's quality standards and specifications[.]"[32]

In their breach of warranty claim, Plaintiffs allege that Harley-Davidson "impliedly and/or expressly warranted that the [Delated Tire], and each and every component part thereof, was fit for the purpose for which it was to be used, was merchantable, and was free from design and manufacturing defects to consumers and users thereof."[33]

Harley-Davidson's Motion for Summary Judgment does not separately address the merits of each of Plaintiffs' claims. Instead, Harley-Davidson argues that it "cannot be liable for a manufacturing defect in a tire it did not manufacture, sell, test, or distribute[.]"[34] Only portions of this argument are relevant to Plaintiffs' negligence and gross negligence claim and strict liability claim.

---

[29] *Id*. ¶ 60 at 12.

[30] *Id*. ¶ 68 at 13.

[31] *Id*. ¶ 87 at 17.

[32] *Id.* ¶ 90 at 17.

[33] *Id.* ¶ 98 at 19.

[34] Motion for Summary Judgment, *supra* note 5, at 8.

Plaintiffs' negligence and gross negligence claim and strict liability claim do not seek to impose liability on Harley-Davidson for selling the Deflated Tire. Rather, the allegations focus on whether Harley-Davidson failed to adequately inspect the Deflated Tire or warn Plaintiffs of known recurring defects in the Dunlop Tire Model (including the Deflated Tire).[35] Plaintiffs' allegations also focus on whether Harley-Davidson designed, manufactured, and was in the chain of distribution of the Deflated Tire.[36] Therefore, only the design, manufacture, and distribution portions of Harley-Davidson's arguments are relevant to Plaintiffs' negligence and gross negligence claim and strict liability claim.

Additionally, Harley-Davidson's arguments that it did not design, manufacture, distribute, or sell the Deflated Tire are not dispositive of Plaintiffs' breach of warranty claim. Plaintiffs allege that Harley-Davidson is liable on this claim because it made and breached implied and express warranties regarding the Deflated Tire.[37] Harley-Davidson may have warranted the Deflated Tire despite having no role in the design, manufacture, distribution, and sale of the Deflated Tire. The parties' briefing does not adequately address this claim. Therefore, Harley-Davidson's Motion for Summary Judgment[38] is DENIED as to Plaintiffs' breach of warranty claim.[39]

---

[35] Second Amended Complaint, *supra* note 1, ¶¶ 59-60 at 11-12.

[36] *Id.* ¶¶ 87, 90 at 17.

[37] *Id.* ¶ 98 at 19.

[38] Motion for Summary Judgment, *supra* note 5.

[39] Second Amended Complaint, *supra* note 1, ¶ 98 at 19.

**Genuine issues of material fact exist regarding Harley-Davidson's
role as a designer and manufacturer of the Deflated Tire**

Plaintiffs assert that Harley-Davidson is a designer and manufacturer of the Deflated Tire.[40] Harley-Davidson asserts that it "does not design or manufacture tires and does not test tires, other than as part of a motorcycle system."[41] Harley-Davidson argues that Plaintiffs base their assertions on (1) a Joint Development Agreement and Amended and Restated Master Supply Agreement (the "2008 Agreement") between Harley-Davidson and Goodyear-Dunlop that was entered unto after the Deflated Tire was manufactured, and (2) documents produced by Harley-Davidson that Plaintiffs misunderstand and misstate.[42]

It is undisputed that Harley-Davidson provides Goodyear-Dunlop with performance specifications[43] which encompass motorcycle handling in: wet braking traction, rain groove response, high speed weave, low speed wobble, serpentine lateral traction, and blow-out bead retention for the tire and wheel assembly (*i.e.*, how beads should remain seated on the wheel after tire deflation).[44] Plaintiffs cite evidence to support their assertion that Harley-Davidson participated in the design of the Deflated Tire:

- Harley-Davidson monitored Goodyear-Dunlop's production of the Dunlop Tire Model and "independently tested . . . the [Dunlop Tire Model] design," at its own Talladega Test Facility in at least 1992;[45]

- Harley-Davidson has approval power over Goodyear-Dunlop's tire designs branded with Harley-Davidson marks;[46]

---

[40] *Id.* ¶ 68 at 13.

[41] Motion for Summary Judgment, *supra* note 5, ¶ 8 at 4.

[42] Reply, *supra* note 26, at 2.

[43] *Id.* at 3-4; Response, *supra* note 25, at 1-2.

[44] Reply, *supra* note 26, at 4.

[45] Response, *supra* note 25, at 3 (citing Affidavit of William Woehrle, *supra* note 11, ¶ 37 at 30).

[46] *Id.* at 3-5.

- On at least one occasion, Goodyear-Dunlop redesigned the Dunlop Tire Model based on Harley-Davidson's specification requirements and feedback;[47] and

- Harley-Davidson represents online that tires co-branded by Harley-Davidson and Goodyear-Dunlop are designed by Harley-Davidson and Goodyear-Dunlop engineers.[48]

Although Harley-Davidson argues that it only provides specifications for the motorcycle system and that Plaintiffs mischaracterize the evidence,[49] on summary judgment, the factual record and all reasonable inferences drawn therefrom must be viewed in a light most favorable to Plaintiffs.[50] The motorcycle system inherently includes the motorcycle's tires. The record at this stage includes some evidence and allows reasonable inferences that Harley-Davidson tested the Dunlop Tire Model, provided feedback to Goodyear-Dunlop on the Dunlop Tire Model's performance, and approved the Dunlop Tire Model's design.

Plaintiffs also cite evidence to support their assertion that Harley-Davidson participated in the manufacturing of the Deflated Tire:

- Harley-Davidson's Production Part Approval Process ("PPAP") requires component suppliers who manufacture Harley-Davidson approved products to have appropriate internal quality control processes;[51]

- The Dunlop Tire Model is the only tire model that Harley-Davidson approves as a replacement tire for the Motorcycle which Brett W. Nielson was driving at the time of the accident; and[52]

- Harley-Davidson, in a promotional video, stated that Goodyear-Dunlop tires "roll out of the Harley-Davidson factory[.]"[53]

---

[47] *Id.* at 3.

[48] *Id*. at 2 (citing Affidavit of William Woehrle, *supra* note 11, ¶ 36 at 28).

[49] Reply, *supra* note 26, at 4.

[50] *Adler*, 144 F.3d at 670.

[51] Reply, *supra* note 26, at 4 (citing Attachment 1, Exhibit A, at 148-165, docket no. 69-1, filed May 8, 2019).

[52] Response, *supra* note 25, at 6-7.

[53] *Id.* at 2 (citing Affidavit of William Woehrle, *supra* note 11, ¶ 36 at 28)

9

The record at this stage includes some evidence and allows reasonable inferences that Harley-Davidson approved and oversaw Goodyear-Dunlop's internal manufacturing quality control processes, approved only the Dunlop Tire Model as replacement tires for the Motorcycle, and claimed Goodyear-Dunlop's manufacturing plants as its own.

Given this record, genuine issues of material fact exist regarding Harley-Davidson's role as the designer and manufacturer of the Dunlop Tire Model, and consequently, the Deflated Tire. Therefore, Harley-Davidson's Motion for Summary Judgment[54] is DENIED as to Plaintiffs' negligence and gross negligence claim and strict liability claim.

### Genuine issues of material fact exist regarding whether Harley-Davidson is in the Deflated Tire's chain of distribution

Plaintiffs allege that Harley-Davidson is in the chain of distribution for the Deflated Tire because Harley-Davidson "participated in the branding" of the Dunlop Tire Model.[55] Utah's strict products liability doctrine imposes liability on "manufacturers, wholesalers, retailers, and any other party involved in the product's chain of distribution."[56]

Harley-Davidson argues that determination of the chain of distribution is purely a legal question.[57] And Harley-Davidson notes that "Plaintiffs have not cited a Utah case" supporting that a product containing a trademark is sufficient to establish the trademark holder as being part of the product's chain of distribution.[58] However, Harley-Davidson's argument ignores that under Utah law manufacturers are in a product's chain of distribution.[59] Because genuine issues

---

[54] Motion for Summary Judgment, *supra* note 5.

[55] Second Amended Complaint, *supra* note 1, ¶¶ 87, 91 at 17-18.

[56] *Bylsma v. R.C. Willey*, 416 P.3d 595, 604 (Utah 2017).

[57] Reply, *supra* note 26, at 8-9.

[58] *Id.* at 9.

[59] *Bylsma*, 416 P.3d at 604.

of material fact exist regarding Harley-Davidson's role as a manufacturer of the Deflated Tire,[60] genuine issues of fact exist regarding whether Harley-Davidson is in the Deflated Tire's chain of distribution.

Harley-Davidson also cites cases from the Tenth Circuit applying Colorado state law[61] and from the Ninth Circuit applying Arizona state law,[62] which hold that placing a trademark on a product, without more, does not establish the trademark holder as an "apparent manufacturer" for the purposes of imposing liability for an alleged manufacturing defect. But in the Tenth Circuit case Harley-Davidson cites, the court indicated that apparent-manufacturer liability may apply to a trademark holder that is "otherwise involved in the [product's] chain of distribution[.]"[63] And the record at this stage includes some evidence and allows reasonable inferences that Harley-Davidson is an apparent manufacturer that was "otherwise involved" in the Deflated Tire's chain of distribution.

Plaintiffs cite evidence that Harley-Davidson markets the Dunlop Tire Model as being designed by "Harley and Dunlop engineers" and "roll[s] out of the Harley Davidson factory."[64] Plaintiffs also cite evidence that Harley-Davidson markets the Dunlop Tire Model as the only Harley-Davidson approved replacement tires for the Motorcycle,[65] and that using non-approved tires "could result in death or serious injury."[66] Therefore, genuine issues of material fact exist regarding whether Harley-Davidson is "otherwise involved" in the Deflated Tire's chain of

---

[60] *Supra* at 7-10.

[61] *Yoder v. Honeywell, Inc.*, 104 F.3d 1215 (10th Cir. 1997).

[62] *Torres v. Goodyear Tire & Rubber Co., Inc.*, 867 F.2d 1234 (9th Cir. 1989).

[63] *Yoder*, 104 F.3d at 1223.

[64] Response, *supra* note 25, at 2.

[65] *Id*. at 6-7.

[66] *Id.* at 6.

distribution as an apparent manufacturer of the Dunlop Tire Model. However, the correct legal standard for determining whether Harley-Davison is an apparent manufacturer is unclear because, as Harley-Davidson notes, there is no case law or statute discussing whether Utah law applies the apparent-manufacturer doctrine, and if so, how the doctrine is applied.

Because genuine issues of material fact exist regarding whether Harley-Davidson is in the Deflated Tire's chain of distribution, Harley-Davidson's Motion for Summary Judgment[67] is DENIED as to Plaintiffs' strict liability claim.

## The parties are invited to brief possible certification to the Utah Supreme Court of the application of the apparent-manufacturer doctrine in Utah

Under Rule 41(a) of the Utah Rules of Appellate Procedure, federal courts may certify a question to the Utah Supreme Court if the applicable Utah law in "a proceeding before the certifying court is uncertain."[68] "[C]ertification is not to be routinely invoked whenever a federal court is present with an unsettled question of state law[,]"[69] but is appropriate "when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue."[70]

> Certification confirms the relative roles of the state and federal courts, and helps resolve cases. Answers to certified questions are authoritative, issued by the court with constitutional responsibility to interpret state law. Those answers put to rest hopes of obtaining a different answer from a different federal judge at the trial or appellate level.[71]

---

[67] Motion for Summary Judgment, *supra* note 5.

[68] UTAH R. APP. P. 41(a).

[69] *Copier by and Through Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998).

[70] *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 335 F. Supp. 2d 1319, 1321 (D. Utah 2004).

[71] David Nuffer, Certification of Legal Questions to the Utah Supreme Court, at 80, (Mar. 28, 2018) (unpublished LL.M. thesis, Duke University School of Law), https://scholarship.law.duke.edu/mjs/7/ (last visited November 18, 2019).

Application of the apparent-manufacturer doctrine is an open question of law in Utah. Neither the Utah Product Liability Code, Utah Code § 78B-6-701, or the Utah Liability Reform Act, Utah Code §§ 78B-5-817 through 823, address whether products liability can be extended to "apparent manufacturers." And the Utah Court of Appeals specifically reserved "the question for another day."[72]

In *McQuivey v. Fulmer Helmets, Inc.*, the Utah Court of Appeals reversed and remanded the case after the lower court incorrectly applied the passive-retailer doctrine to dismiss the plaintiff's product liability claims.[73] But the court noted that "[u]nder the Second Restatement of Torts, '[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."[74] And "[o]ne puts out a chattel as his own product when he puts it out under his name or affixes to it his trade name or trademark."[75] This is typically referred to as the "apparent-manufacturer doctrine."[76] "The primary rational for imposing liability of the apparent manufacturer of a defective product is that it induced the purchasing public to believe that it is the actual manufacturer, and . . . [thus] to purchase the product in reliance on the apparent manufacturer's reputation and skill in making it."[77] The court further recognized that "[a]lthough Utah has not yet addressed the question, most jurisdictions to

---

[72] *McQuivey v. Fulmer Helmets, Inc.*, 335 P.3d 361, 365-66 (Utah Ct. App. 2014), *overturned on other grounds by Bylsma v. RC Willey*, 416 P.3d 595 (2017).

[73] *Id*. at 366. The passive-retailer doctrine has since been rejected under Utah law. *Bylsma*, 416 P.3d 595.

[74] *McQuivey*, 335 P.3d at 365 (quoting Restatement (Second) of Torts § 400 (1965)).

[75] *Id*. (quoting Restatement (Second) of Torts § 400(d)).

[76] *Id*. (citing *Long v. United States Brass Corp.*, 333 F.Supp.2d 999, 1002 (D. Colo. 2004)).

[77] *Id*. (citing *Hebel v. Sherman Equip.*, 442 N.E.2d 199, 203 (Ill. 1982))

consider the apparent-manufacturer doctrine have adopted it."[78] But the court reserved "the question for another day."[79]

The record has some evidence that Harley-Davidson affixes its trademarks on the Dunlop Tire Model; generally sells the Dunlop Tire Model;[80] provides system specifications to Goodyear-Dunlop;[81] tests the Dunlop Tire Model as part of its system tests;[82] requires original equipment suppliers to have an appropriate internal quality control process;[83] and purports online that the Dunlop Tire Model is are designed by "Harley and Dunlop engineers" and "roll[s] out of the Harley Davidson factory."[84] Therefore, application of the apparent-manufacturer doctrine may be "outcome determinative" of whether Harley-Davidson is liable on Plaintiffs' strict liability claim.

Any party favoring certification of the question of Utah law's application of the apparent-manufacturer doctrine shall within 21 days of the date of this Memorandum Decision and Order file a motion for certification, with a proposed Order Certifying Question. The motion for certification shall clearly state, with adequate discussion and support:

(1) the question and its role in the case as determinative of an issue;

(2) the relationship of that question to the case as a whole and the effect of certification on other procedures in the case such as discovery and motions;

---

[78] *Id*.

[79] *Id*. at 366.

[80] Reply, *supra* note 26, at 6.

[81] Harley-Davidson Motor Company Group, LLC's Response to Plaintiffs' Revised First Set of Discovery Requests ("Harley-Davidson's Response to First Set of Discovery Requests"), Request for Admission No. 12 at 1, docket no. 58-38, filed May 03, 2019.

[82] Reply, *supra* note 26, at 4.

[83] *Id.* at 5.

[84] Response, *supra* note 25, at 2.

(3) available authority on the question from appellate decisions, constitutional provisions, or statutes of the other jurisdiction;

(4) available guidance on the question from decisions of other sources;

(5) the facts which are relevant to the determination of the question and which show the nature of the controversy and the context in which the question arises;[85]

(6) the anticipated time and expense of receiving an answer to the question;

(7) the benefits of an authoritative decision to other litigation or disputes in this or other courts, tribunals, or agencies;

(8) the relationship of the issue to the policy of the other jurisdiction;

(9) how comity and federalism will be affected by a decision to certify or not certify;

(10) the list of documents which should be attached to the certification order when transmitted to the Utah Supreme Court which will help the Utah Supreme Court understand the context of the issue presented; and

(11) other matters material to the decision to certify or not to certify.

And the proposed Order Certifying Question shall clearly state, with adequate discussion and support:

(1) the question of law to be answered;[86]

(2) that the question certified is a controlling issue of law in the proceeding[87] and why the answer to the question will materially advance the termination of the litigation;

(3) that there appears to be no controlling Utah law;[88]

(4) that the Utah Supreme Court may reformulate the question;

(5) all facts which are relevant to the determination of the question certified and which show the nature of the controversy, the context in which the question arose, and the procedural steps by which the question was framed;

---

[85] UTAH R. APP. P. 41(c)(2).

[86] *Id*. at 41(c)(1)(A).

[87] *Id*. at 41(c)(1)(B).

[88] *Id*. at 41(c)(1)(C).

(5) any additional reasons for the entry of the certification order that are not otherwise apparent;[89]

(6) a listing of the record documents which the parties believe should be sent to the Utah Supreme Court, including those which will help that court understand the context of the issue presented;

(7) the names and addresses of counsel of record and parties appearing without counsel;

(8) such other matters as may be appropriate.

## ORDER

IT IS HEREBY ORDERED that Harley-Davidson's Motion[90] for Summary Judgment is DENIED.

IT IS FURTHER HEREBY ORDERED any party favoring certification of the question of Utah law's application of the apparent-manufacturer doctrine shall within 21 days of the date of this Memorandum Decision and Order file a motion for certification, as outlined above.

Signed November 22, 2019.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[89] *Id*. at 41(c)(3).

[90] Docket no. 47, filed Mar. 29, 2019.