IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANGELA K. NIELSON, individually and on behalf of THE ESTATE OF BRETT W. NIELSON; RYLEE NIELSON; ERIC NIELSON; and LINDA NIELSON,<br><br>Plaintiffs,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC; GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.; THE GOODYEAR TIRE & RUBBER CO.; SUMITOMO RUBBER USA, LLC; and BELLINGHAM HARLEY-DAVIDSON, INC.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO EXCLUDE EXPERT TESTIMONY OF WILLIAM WOEHRLE**<br><br>Case No. 4:18-cv-00013-DN-PK<br><br>District Judge David Nuffer |

This action arises from a motorcycle accident allegedly caused by a sudden and catastrophic failure of the motorcycle's rear tire.[1] Defendants Sumitomo Rubber USA, LLC f/k/a Goodyear Dunlop Tires North America, Ltd. ("Sumitomo"), The Goodyear Tire & Rubber Co. ("Goodyear"), and Harley-Davidson Motor Company Group, LLC ("Harley") seek to exclude certain opinions and testimony of Plaintiff's expert, William J. Woehrle.[2] Sumitomo and Goodyear argue that Mr. Woehrle's opinions that defects in the motorcycle's rear tire caused or

---

[1] Second Amended Complaint ("Complaint") ¶¶ 19-20 at 4, docket no. 57, filed May 2, 2019.

[2] Defendants Sumitomo Rubber USA, LLC f/k/a Goodyear Dunlop Tires North America, Ltd. and The Goodyear Tire & Rubber Company's Motion to Exclude Testimony of William Woehrle and Supporting Memorandum of Law ("Sumitomo and Goodyear's Motion"), docket no. 135, filed Oct. 9, 2020; Harley-Davidson's Motion to Exclude Opinion Testimony of William Woehrle and Incorporated Memorandum of Law ("Harley's Motion"), docket no. 137, filed Oct. 9, 2020.

contributed to the accident are unreliable and will not assist the jury.[3] Harley argues that Mr. Woehrle opinions that defects in the motorcycle's wheel rim caused or contributed to the accident are unreliable.[4] Harley also argues that Mr. Woehrle is not qualified to offer expert opinions that the motorcycle's wheel rim had defects, violated FMVSS, and that Harley is liable for the tire and for using the wheel rim.[5]

Because Mr. Woehrle's opinions that defects in the motorcycle's rear tire and wheel rim caused or contributed to the accident are unreliable, Sumitomo and Goodyear's Motion[6] and Harley's Motion[7] are GRANTED.

**Contents**
BACKGROUND ................................................................................................................ 2
DISCUSSION .................................................................................................................... 6
    Standard of review for the admissibility of expert testimony ........................... 6
    Mr. Woehrle's opinions that defects in the motorcycle's rear tire and wheel rim caused or
        contributed to the accident are unreliable ............................................... 8
ORDER ............................................................................................................................ 14

## BACKGROUND

On April 22, 2016, Brett W. Nielson and Angela K. Nielson, were riding their 1995 Harley-Davidson Ultra Classic Electra Glide motorcycle northbound on Interstate 15 in Iron County, Utah, when the motorcycle's rear tire suddenly deflated.[8] The rear tire was a model

---

[3] Sumitomo and Goodyear's Motion, *supra* note 2, at 7-10.

[4] Harley's Motion, *supra* note 2, at 3-9.

[5] *Id*. at 2, 9-11.

[6] *Supra* note 2, docket no. 135, filed Oct. 9, 2020.

[7] *Supra* note 2, docket no. 137, filed Oct. 9, 2020.

[8] Complaint, *supra* note 1, ¶¶ 15, 17, 19 at 4.

MT90B16 Dunlop D402 tire.[9] It was not the original tire sold with the motorcycle[10] and at the time of the accident, was over eight years old[11] and over sixty percent worn.[12] The tire is not alleged to have had any prior issues with air leakage.[13] And the Nielsons had checked the tire's air pressure approximately one hour's drivetime before it deflated.[14]

When the rear tire deflated, Brett Nielson lost control of the motorcycle at highway speeds.[15] The motorcycle tipped over and rolled, and the Nielsons were thrown from the vehicle.[16] Brett Nielson died at the scene.[17] Angela Nielson suffered serious, permanent injuries.[18] This accident was a great tragedy.

Plaintiffs subsequently initiated this action against Defendants, whom Plaintiffs allege designed, manufactured, and distributed the motorcycle and its rear tire.[19] Plaintiffs assert claims for: (1) negligence and gross negligence; (2) strict products liability; and (3) breach of implied and express warranties.[20] To support their claims, Plaintiffs designated William J. Woehrle as "an expert in tires and tire-and-rim fitment and the related failure analyses of the tire and its tire-to-rim interface as well as the resulting crash and its dynamics and causes and results."[21]

---

[9] *Id*. ¶ 16 at 4.

[10] Final Report of William Woehrle ("Woehrle Report") ¶ 45 at 47, docket no. 166-2, filed Nov. 13, 2020; Deposition of Mark Hutchison at 187:1-13, docket no 166-8, filed Nov. 13, 2020.

[11] Deposition of William J. Woehrle ("Woehrle Deposition") at 94:12-25, docket no. 135-2, filed Oct. 9, 2020.

[12] *Id*. at 139:16-22.

[13] *Id*. at 319:4-17, 320:13-17.

[14] *Id*. at 319:13-320:17.

[15] Complaint, *supra* note 1, ¶ 17 at 4.

[16] *Id*. ¶ 20 at 4.

[17] *Id*. ¶ 21 at 4.

[18] *Id*. ¶ 22 at 5.

[19] *Id*. ¶¶ 11 at 3, 15 at 4, 25 at 5, 59 at 11-12, 67 at 13, 87 at 17.

[20] *Id*. ¶¶ 24-101 at 5-19.

[21] Plaintiffs' Expert Witness Designations at 2, docket no. 91-1, filed July 8, 2019.

Specifically, Mr. Woehrle "was asked to examine [the motorcycle's rear tire] and accompanying wheel to determine the cause of the tire failure."[22]

Mr. Woehrle's failure analysis included: inspection of the accident scene; review of Plaintiff's accident reconstruction expert's report; examination of the motorcycle, particularly the rear tire and wheel rim; and comparing various measurements and aspects of the rear tire and wheel rim to other tires, wheel rims, and industry and national standards.[23] Based on his analysis, Mr. Woehrle opines that the accident was caused by a loss of control resulting from a run-soft tire failure and an unseating of the opposite serial side ("OSS"), left side bead.[24] He further opines that the run-soft failure was due to over-deflection;[25] that the over-deflection was due to under-inflation;[26] and that the under-inflation was due to a loss of pressure while the tire was being operated on its last trip.[27]

Mr. Woehrle's failure analysis also ruled out several possible causes of the tire's loss of pressure, including: puncture; impact damage; improper repair; excessive speed; excessive wear; overloading; and excessive age.[28] Mr. Woehrle opines that the loss of pressure resulted from a leak between the tire bead and the wheel rim flange,[29] which was caused by multiple defects in the tire and wheel rim:

---

[22] Woehrle Report, *supra* note 10, ¶ 1 at 2.

[23] *Id*. ¶¶ 7-22 at 4-27, 42-44 at 41-45, 48-63 at 49-68, 73-83 at 77-94.

[24] *Id*. ¶¶ 95.1, 95.14-95.15 at 103.

[25] *Id*. ¶ 95.2 at 103.

[26] *Id*. ¶ 95.3 at 103.

[27] *Id*. ¶ 95.4 at 103.

[28] *Id*. ¶ 84 at 95-96.

[29] *Id*. ¶ 95.5 at 103.

- The leak was due to toe ring flash on the tire bead.[30]

- The leak was also due to non-fill in the tire bead.[31]

- The leak was also due to excessively thin chafer rubber in the tire bead.[32]

- The leak was also due to a distortion of the tire bead.[33]

- The leak was also due to the design of the D rim with a small bead seat diameter.[34]

- The leak was also due to a non-complaint hump in the subject rim.[35]

Mr. Woehrle further opines that the bead defects, combined with the rim defects, caused the OSS, left side bead to unseat.[36] Additionally, Mr. Woehrle offered opinions regarding Harley's liability for the tire and wheel rim:

- With the "Harley Davidson" brand and logo molded on the tire sidewall, Harley must also be held accountable for these tire defects.[37]

- Harley is using a rim that is unreasonably dangerous and is grossly negligent in this practice.[38]

To repeat, Sumitomo and Goodyear seek exclusion of Mr. Woehrle's opinions that defects in the tire caused or contributed to the tire's failure, the bead unseating, and the resulting accident.[39] Harley seeks exclusion of Mr. Woehrle's opinions that wheel rim defects caused or

---

[30] *Id.* ¶ 95.6 at 103.

[31] *Id.* ¶ 95.7 at 103.

[32] *Id.* ¶ 95.8 at 103.

[33] *Id.* ¶ 95.9. at 103.

[34] *Id.* ¶ 95.10 at 103.

[35] *Id.* ¶ 95.11 at 103.

[36] *Id.* ¶ 95.12 at 103.

[37] *Id.* ¶ 95.18 at 103.

[38] *Id.* ¶ 95.19 at 103.

[39] Sumitomo and Goodyear's Motion, *supra* note 2, at 7-10.

contributed to the tire's failure, the bead unseating, and the resulting accident.[40] Harley also seeks exclusion of Mr. Woehrle's opinions that the wheel rim had defects, violated FMVSS, and that Harley is liable for the tire and for using the wheel rim.[41]

## DISCUSSION

### Standard of review for the admissibility of expert testimony

FED. R. EVID. 702 addresses the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[42]

The district court is tasked with the responsibility of serving as the gatekeeper of expert testimony.[43] It has "broad latitude" in deciding "how to determine reliability" and in making the "ultimate reliability determination."[44]

The Federal Rules of Evidence generally favor the admissibility of expert testimony: "the rejection of expert testimony is the exception rather than the rule."[45] Often times the appropriate means of attacking shaky but admissible expert testimony is through "[v]igorous

---

[40] Harley's Motion, *supra* note 2, at 3-9.

[41] *Id*. at 2, 9-11.

[42] FED. R. EVID. 702

[43] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

[44] *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

[45] FED. R. EVID. 702 Advisory Committee Notes; *Heer v. Costco Wholesale Corp.*, 589 Fed. App'x 854, 861 (10th Cir. 2014).

cross-examination [and the] presentation of contrary evidence."[46] Thus, the district "court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[47]

However, "[t]o say this is not to deny the importance of [the] gatekeeping requirement."[48] "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."[49] "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony."[50] "It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[51] And "it is the specific relation between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute . . . that renders [expert] testimony both reliable and relevant."[52]

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."[53] "In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[54] "Second, if the expert is sufficiently

---

[46] *Daubert*, 509 U.S. at 596.

[47] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty, State of Miss*, 80 F.3d 1074, 1078 (5th Cir. 1996).

[48] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152.

[49] *Daubert*, 509 U.S. 595 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

[50] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152.

[51] *Id*.

[52] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005).

[53] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

[54] *Id*. (quoting FED. R. EVID. 702).

qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology."[55]

Sumitomo and Goodyear challenge only the reliability of Mr. Woehrle's opinions.[56] Harley challenges both the reliability of Mr. Woehrle's opinions and his qualifications to give such opinions.[57] Because Sumitomo and Goodyears' arguments and Harley's arguments regarding the reliability of Mr. Woehrle's opinions are substantially similar and lead to the same result,[58] they will be addressed first. And because Mr. Woehrle's opinions that defects in the motorcycle's tire and wheel rim caused or contributed to the accident are unreliable and excluded from trial,[59] it is unnecessary to address Harley's arguments regarding Mr. Woehrle's qualifications to offer expert opinions.[60]

### Mr. Woehrle's opinions that defects in the motorcycle's rear tire and wheel rim caused or contributed to the accident are unreliable

"[U]nder the Rules the [district court] must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[61] The inquiry of scientific reliability is flexible and focuses on principles and methodology.[62] It is also specific, not general: "The [district] court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge [and opinion testimony drawn therefrom] to assist the jurors in deciding the particular

---

[55] *Id*

[56] Sumitomo and Goodyear's Motion, *supra* note 2.

[57] Harley's Motion, *supra* note 2.

[58] Sumitomo and Goodyear's Motion, *supra* note 2, at 7-10; Harley's Motion, *supra* note 2, at 3-9.

[59] *Infra* Discussion at 8-12.

[60] Harley's Motion, *supra* note 2, at 2, 9-11.

[61] *Daubert*, 509 U.S. at 589.

[62] *Id.* at 594-595.

issues in the case."[63] "To be reliable . . . an expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'"[64] "In other words, 'an inference or assertion must be derived by the scientific method . . . [and] must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known."[65]

Several non-exhaustive factors may be relied on for determining scientific reliability, including: whether the theory or technique can be (and has been) tested; whether the theory or technique has been subjected to peer review and publication; whether the theory or technique has a known or potential rate of error; and whether the theory or technique has attracted acceptance in the relevant scientific community.[66] But nothing "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[67] "A [district] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[68]

Mr. Woehrle's use of physical observation and comparison of various aspects in the motorcycle's tire and wheel rim can be reliable scientific methodologies on which admissible opinion testimony may be derived. This methodology, combined with testing, allowed Mr. Woehrle to opine that the tire suffered a run-soft failure resulting for a loss of pressure.[69] It also

---

[63] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 156.

[64] *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 590).

[65] *Id*. (quoting *Daubert*, 509 U.S. at 590).

[66] *Daubert*, 509 U.S at 593-594.

[67] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[68] *Id*.

[69] Woehrle Report, *supra* note 10, ¶¶ 95.1-95.4, 95.14-95.15 at 103.

allowed Mr. Woehrle to rule out several possible causes of the tire's loss of pressure.[70] While Sumitomo, Goodyear, and Harley may disagree with some of these opinions, they have not sought to exclude them.[71] Rather, these opinions are appropriately left for challenge though "[v]igorous cross-examination [and the] presentation of contrary evidence."[72]

But this was only the beginning of Mr. Woehrle's opinions. He goes on to opine that the tire's loss of pressure resulted from a leak between the tire bead and the wheel rim flange caused by multiple defects in the tire and wheel rim,[73] and that these defects also caused the tire's OSS, left side bead to unseat.[74] And this is where the reliability of Mr. Woehrle's methodologies break down.

Mr. Woherle founded his defect causation opinions on his elimination of other possible causes and a broad-based principle that a corruption or disturbance between the bead and rim on a tubeless tire can cause air leakage and loss of pressure.[75] This methodology is not per se unreliable. In *Bitler v. A.O. Smith Corp.*, the Tenth Circuit Court of Appeals affirmed the district court's decision to admit expert testimony that reasoned backwards to the cause of a single explosion through a process of eliminating possible causes until the most likely cause was identified.[76] The experts in *Bitler* opined, after eliminating other possible causes, that the

---

[70] *Id*. ¶ 84 at 95-96.

[71] Sumitomo and Goodyear's Motion, *supra* note 2; Harley's Motion, *supra* note 2.

[72] *Daubert*, 509 U.S. at 596.

[73] Woehrle Report, *supra* note 10, ¶¶ 95.5-95.11 at 103.

[74] *Id*. ¶ 95.12 at 103.

[75] *Id*. ¶¶ 28-29 at 28-29, ¶ 84 at 95-96; Woehrle Deposition, *supra* note 11, at 326:7-327:11, 331:24-332:5.

[76] 400 F.3d at 1237-1238. The Tenth Circuit likened this methodology to "differential diagnosis" in the medical context, which federal courts have "regularly found" reliable. *Id*. at 1237. "[T]he underlying premise of differential diagnosis is that there is an established connection between certain possible causes and a condition or symptom—then all of the established causes are ruled out but one." *Id*. at 1238 n.6 (quoting FED. R. EVID. Manual 702-35 (8th ed. 2002)).

explosion resulted from a gas leak caused by copper sulfide particles being lodged on a water heater's valve seat.[77] It was "uncontroverted that if copper sulfide particles of sufficient size became lodged on the safety value seat, then a gas leak substantial enough to cause the explosion . . . could occur."[78] But the experts did not test their theory.[79]

The Tenth Circuit held that "the inference to the best explanation must first be in the range of possible causes; there must be some independent evidence that the cause identified is of the type that could have been the cause."[80] "But more than mere possibility, an inference to the best explanation for the cause of an accident must eliminate other possible sources as highly improbable, *and* must demonstrate that the cause identified is highly probable."[81] Ultimately, because "[t]he core science—that copper sulfide particles are the kind of thing that when lodged on the valve seat can cause leaks—[wa]s sufficiently well-established . . . the district court did not abuse its discretion in finding it reliable."[82] Testing was not necessary for the theory to be reliable.[83]

Unlike the expert testimony in *Bitler*, there is an impermissible analytical gap between the scientific principle Mr. Woehrle relies on and his defect causation opinions. There is no scientific basis for his opinions that the asserted defects in the tire and wheel rim caused or contributed to the tire failure, bead unseating, or resulting accident.[84] Mr. Woehrle points to no

---

[77] *Id*. at 1231.

[78] *Id*. at 1238.

[79] *Id*. at 1235.

[80] *Id*. (citing *Joiner*, 522 U.S. at 146).

[81] *Id*. at 1238 (emphasis added).

[82] *Id*. at 1236.

[83] *Id*.

[84] *C.f. Heer*, 589 Fed. App'x at 861.

data, testing, or established connection demonstrating that the asserted tire and wheel rim defects can constitute a corruption or disturbance that will lead to air leakage or loss of pressure. He also points to no data, testing, or established connection demonstrating that the asserted defects can cause a bead to unseat. Indeed, Mr. Woehrle acknowledged that his defect causation opinions are not supported by any scientific study or peer-reviewed literature.[85] And despite acknowledging that testing could be performed,[86] Mr. Woehrle performed no testing to validate his defect causation opinions generally or regarding the specific tire failure, bead unseating, and accident suffered by the Nielsons.[87]

Mr. Woehle's defect causation opinions are unsupported *ipse dixit*. There is no "independent evidence"[88] that the asserted tire and wheel rim defects are of the type that could have been the cause or a contributor to the tire failure, bead unseating, or resulting accident. And there is nothing other than Mr. Woehrle's opinions to demonstrate it is "highly probable"[89] that the asserted tire and wheel rim defects were the cause or a contributor to the tire failure, bead unseating, or resulting accident.

As the Seventh Circuit Court of Appeals recently stated in a similar case in which Mr. Woehrle offered similar tire defect opinions that were determined to be unreliable:

> To satisfy the requirements of Rule 702 and *Daubert*, [Mr.] Woehrle needed to show that his conclusions were the fruit of a rigorous, objectively-verifiable approach—something more than mere speculation. While [Mr.] Woehrle may well have had the experience and knowledge to make this showing, he failed to do so. All of this leads to underscore anew that even a 'supremely qualified expert

---

[85] Woehrle Deposition, *supra* note 11, at 138:1-139:10, 274:11-276:21, 277:25-278:18, 281:1-282:24, 284:24-285:21, 315:12-17, 321:7-22, 326:7-327:22.

[86] *Id*. at 316:6-317:7.

[87] *Id*. at 138:1-139:10, 273:12-274:10, 277:25-278:4, 281:1-4, 281:12-282:17-20, 284:24-285:21, 313:23-315:11, 315:20-317:13, 321:7-22, 326:7-327:14, 328:15-21, 329:24-330:6.

[88] *Bitler*, 400 F.3d at 1235.

[89] *Id*. at 1238.

>cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.' The record amply supports the . . . conclusion that the [plaintiffs] failed to establish that [Mr.] Woehrle's opinions were sufficiently reliable.[90]

The record in the case reveals the same, Mr. Woehrle's defect causation opinions are not the fruit of a rigorous, objectively verifiable approach. They are unsupported speculation and unreliable under the standards of Rule 702 and *Daubert*, and will not assist the trier of fact. Therefore, Mr. Woehrle's opinions and testimony that defects in the motorcycle's tire and wheel rim caused or contributed to the accident are excluded from trial.

---

[90] *Timm v. Goodyear Dunlop Tires N.A., Ltd.*, 932 F.3d 986, 994 (7th Cir. 2019) (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

# ORDER

IT IS HEREBY ORDERED that Sumitomo and Goodyear's Motion[91] is GRANTED, and that Harley's Motion[92] is GRANTED. Mr. Woehrle's opinions and testimony that defects in the motorcycle's tire and wheel rim caused or contributed to the accident are excluded from trial. Specifically, Mr. Woehrle may not present expert opinions and testimony at trial relating to the following:

- The loss of pressure in the motorcycle's rear tire resulted from a leak between the tire bead and the wheel rim flange caused by multiple defects in the tire and wheel rim.[93]

- The leak was due to toe ring flash on the tire bead.[94]

- The leak was also due to non-fill in the tire bead.[95]

- The leak was also due to excessively thin chafer rubber in the tire bead.[96]

- The leak was also due to a distortion of the tire bead.[97]

- The leak was also due to the design of the D rim with a small bead seat diameter.[98]

- The leak was also due to a non-complaint hump in the subject rim.[99]

- The bead defects, combined with the rim defects, caused the OSS, left side bead to unseat.[100]

---

[91] *Supra* note 2, docket no. 135, filed Oct. 9, 2020.

[92] *Supra* note 2, docket no. 137, filed Oct. 9, 2020.

[93] Woehrle Report, *supra* note 10, ¶ 95.5 at 103.

[94] *Id*. ¶ 95.6 at 103.

[95] *Id*. ¶ 95.7 at 103.

[96] *Id*. ¶ 95.8 at 103.

[97] *Id*. ¶ 95.9. at 103.

[98] *Id*. ¶ 95.10 at 103.

[99] *Id*. ¶ 95.11 at 103.

[100] *Id*. ¶ 95.12 at 103.

- With the "Harley Davidson" brand and logo molded on the tire sidewall, Harley must also be held accountable for these tire defects.[101]

- Harley is using a rim that is unreasonably dangerous and is grossly negligent in this practice.[102]

Signed March 10, 2021.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[101] *Id*. ¶ 95.18 at 103. This opinion would also be subject to exclusion at trial because it constitutes an improper legal conclusion. *A.E. by and through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) ("[A]n expert may not state legal conclusions drawn by applying the law to the facts.").

[102] *Id*. ¶ 95.19 at 103. This opinion would also be subject to exclusion at trial because it constitutes an improper legal conclusion. *A.E. by and through Evans*, 936 F.2d at 476.